JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARNETTE LINDSEY,<br><br>Plaintiff,<br><br>v.<br><br>KNIGHT TRANSPORTATION, INC ET AL.,<br><br>Defendants. | Case No.: 5:25-CV-00328-MEMF-SP<br><br>**ORDER DENYING AS MOOT MOTION TO DISMISS OR IN THE ALTERNATIVE STAY ACTION AND GRANTING MOTION FOR REMAND BASED ON LACK OF SUBJECT MATTER JURIDICTION WITH LEAVE TO AMEND [ECF NOS. 12, 13]** |

Before the Court is the Motion to Dismiss or in the Alternative Stay Action filed by Defendant Knight Transportation, Inc. ECF No. 12. Also before the Court is the Motion for Remand Based on Lack of Subject Matter Jurisdiction filed by Plaintiff Karnette Lindsey. ECF No. 13. For the reasons stated herein, the Court DENIES AS MOOT the Motion to Dismiss or in the Alternative Stay Action (ECF No. 12) and GRANTS the Motion for Remand Based on Lack of Subject Matter Jurisdiction (ECF No. 13).

/ / /

/ / /

I. **Background**

A. **Factual Allegations**[1]

Plaintiff Karnette Lindsey ("Lindsey") is a resident of California. Compl. ¶ 1. Defendant Knight Transportation, Inc. ("Knight") is a corporation organized under the laws of the State of Arizona that owns and operates terminals throughout the State of California. *Id.* ¶¶ 5, 17. Its primary business is the transportation of goods. *Id.* ¶ 4. From May 2023 to October 2023, Knight employed Lindsey as a Class A Commercial Driver. *Id.*

Due to certain policies and practices, Lindsey suffered various California Labor Code ("Labor Code") and California Business and Professional Code violations. *Id.* ¶¶ 17–43. In particular, Knight failed to pay its drivers, including Lindsey, for all of the hours they worked, including: (1) time spent completing pre-trip and post-trip truck inspections, (2) time spent delayed at a customer location while waiting to pick up or deliver goods (i.e., "detention time"), and (3) time spent transporting empty trailers from one destination to another (i.e., "deadhead trucking"). *Id.* ¶¶ 20–30. Knight also failed to compensate Lindsey and other drivers for work-related expenses. *Id.* ¶¶ 31–37. Finally, Knight deducted wages from its drivers through compensating them using "EFS" cards that were not recognized by many banks and that were subject to bank and ATM withdrawal fees that drivers would not necessarily have incurred had they been paid via check or direct deposit. *Id.* ¶¶ 38–43.

B. **Procedural History**

Lindsey filed suit alleging class action and Private Attorneys General Act claims in San Bernardino County Superior Court on December 4, 2023. ECF No. 1-1. She brings seven claims under California law: (1) failure to pay minimum wages in violation of Cal. Lab. Code Sections 1197, 1198; (2) failure to reimburse business expenses in violation of Cal. Lab. Code Section 2802; (3) failure to pay wages as required in violation of Cal. Lab. Code Section 204; (4) failure to pay

---

[1] All facts stated herein are taken from the allegations in Plaintiff's Complaint unless otherwise indicated. ECF No. 1-1 ("Complaint" or "Compl."). For the purposes of this Motion, the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations, and is therefore not—at this stage—finding that they are true.

wages due upon termination in violation of Cal. Lab. Code Sections 201–203; (5) failure to provide accurate itemized wages statements in violation of Cal. Lab. Code Section 226; (6) unlawful deduction of wages in violation of Cal. Lab. Code Section 221; and (7) violation of Bus. & Prof. Code § 17200 *et seq*. *See generally* Compl. Lindsey brings the First and Second, and Fourth through Seventh Causes of action as a class action, on behalf of current and former Knight employees. *Id.* ¶ 3. Lindsey defines the class as "each individual whom Knight employee as a Commercial Driver in California at any time since the date four years prior to the filing of the instant case." *Id.*[2]

On February 5, 2025, Knight removed the action to this Court pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act ("CAFA"), and 28 U.S.C. § 1441. *See* ECF No. 1 ("NOR").

Knight filed the Motion to Dismiss or in the Alternative Stay Action on April 8, 2025. ECF No. 12 ("MTD"). The Motion to Dismiss is fully briefed. *See* ECF Nos. 15 ("Lindsey Opposition" or "Lindsey Opp'n"), 19 ("Knight Reply"). Lindsey filed the Motion for Remand Based on Lack of Subject Matter Jurisdiction on April 16, 2025. ECF No. 13 ("MTR"). The Motion to Remand is also fully briefed. *See* ECF Nos. 18 ("Knight Opposition" or "Knight Opp'n"), 20 ("Lindsey Reply").

On August 28, 2025, the Court held a hearing on the Motion.

## II.     Legal Standard

### A. Class Action Fairness Act

"Federal courts are courts of limited jurisdiction. They possess only the power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Removal of a state action to federal court is appropriate only if the district court would have had original jurisdiction over the action. *See* 28 U.S.C. § 1441(a). Under CAFA, federal courts have original jurisdiction over civil class actions in which (1) the aggregate number of members in the proposed class is 100 or more; (2) the amount in controversy exceeds the sum or value of $5,000,000; and (3) the parties are minimally diverse. 28 U.S.C. §§ 1332(d)(2), (5)(b).

When a plaintiff files an action in state court over which federal courts might have jurisdiction, the defendant may remove the action to federal court. *See* 28 U.S.C. § 1446. When the

---

[2] For sake of simplicity, the Court refers to members of the alleged putative class as "drivers" in this Order.

defendant does so pursuant to CAFA, the defendant must make a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). If the plaintiff contests whether the amount of controversy is sufficient for jurisdiction, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88.

The defendant who removed the case bears the burden "to show the amount in controversy by a preponderance of the evidence." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022). There is "no antiremoval presumption" in cases invoking CAFA jurisdiction. *Dart Cherokee*, 574 U.S. at 89. In other words, while a defendant bears the burden of showing removal is proper, there is no "thumb on the scale against removal." *Jauregui*, 28 F.4th at 994.

Rather, the procedure is that "[t]he parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (internal quotation marks omitted)). In determining the amount in controversy, the defendant may rely on "a chain of reasoning that includes assumptions." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019). "An assumption may be reasonable if it is founded on the allegations of the complaint." *Id.* However, "a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Ibarra*, 775 F.3d at 1197. Thus, when the calculations cannot be justified by the allegations in the complaint—or are "unreasonable" assumptions—the removing party must present evidence to support the assumptions made. *Perez v. Rose Hills Co.*, 131 F.4th 804, 809 (9th Cir. 2025). Put another way, the district court must first consider whether any assumptions made by the defendant are a reasonable interpretation of the complaint, and my not reject assumptions on the basis that they are not supported by evidence. *Perez*, 131 F.4th at 809.

It is well-settled in the Ninth Circuit that CAFA's provisions should be interpreted broadly with a "strong preference" for class actions to be heard in federal court *when properly removed*. *Jauregui*, 28 F.4th at 993. And in the early stages of litigation, a defendant has no choice but to rely

on assumptions when calculating an amount in controversy using the plaintiff's complaint before resolving any disputes over key facts. *Id.* As a result, it is inappropriate to demand exact certainty from a defendant in their calculations of the amount in controversy. *Id.* However, "[w]here a defendant's assumption is unreasonable on its face without comparison to a better alternative, a district court may be justified in simply rejecting that assumption and concluding that the defendant failed to meet its burden." *Id.* at 996.

On the other hand, where "a defendant's assumption is rejected because a different, better assumption is identified . . . the district court should consider the claim under the better assumption—not just zero-out the claim." *Id.* In such circumstances, the Court should identify, applying a preponderance of the evidence standard, the best possible assumptions, and use them to calculate the total amount in controversy. *See id.* If the total amount is found to be greater than $5 million, the action will remain in federal court. *See* 28 U.S.C. § 1332(d)(2). If not, it should be remanded to state court. *See id.*

### III. Discussion

In its NOR, Knight initially estimated $16,225,000 in controversy, well over the CAFA jurisdictional threshold requirement. NOR ¶¶ 45–59. In its Opposition, Knight estimated a greater sum of $16,425,000 in controversy. Knight's total amount in controversy valuation is based on its estimates for Lindsey's (1) minimum wage claim, (2) liquidated damages claim, (3) wage statement penalties claim, (4) waiting time penalties claim, and (5) attorneys' fees. *See generally* Knight Opp'n, *see also* NOR.

In moving for remand, Lindsey challenges the assumptions that that undergird Knights' computation for each of the specified claims as unsubstantiated and lacking in evidence, and therefore unreasonable. *See* MTR at 1. Lindsey argues that Knight's reliance on such faulty assumptions is designed to inflate its overall amount in controversy estimate.

In Opposition, Knight asserts the global defense that Lindsey's motion presents is a facial challenge, lacking in reasoned arguments and providing no evidence to refute any of Knight's assumptions. Knight Reply at 1–2. The Court finds this argument unavailing as governing authority makes clear that the burden of demonstrating jurisdiction rests with Knight. *Ibarra*, 775 F.3d at

1199. Moreover, as set forth below, the Court finds that Lindsey has stated reasoned challenges that undermine Knight's assumptions.

Knight's Opposition also references testimony from the declarations of John Ellis, counsel for Knight; Robin Rohwer, Vice President of Payroll Administrator Swift Transportation Services Co., LLC; and Matthew Sciascia, Senior Director of Safety for Knight Transportation. ECF Nos. 18-1 ("Ellis Decl."), 18-2 ("Rohwer Decl."), 18-3 ("Sciascia Decl.").

Ellis testified, in pertinent part, that he would expect Plaintiff's Counsel to claim no less than $1,000,000 in fees at hourly rates of at least $550 per hour and that Plaintiff's Counsel would claim at least 1,819 hours in litigating this action. Ellis Decl. ¶ 3.

Rohwer testified, in pertinent part, that from December 5, 2020, through February 2025, Knight employed more than 1,000 drivers who were California residents and/or assigned to a California terminal for at least 50,000 aggregate weeks. Rohwer Decl. ¶¶ 4, 5. In addition, Rohwer stated that of the 1,000 drivers who were California residents and/or assigned to a California terminal, 500 ended their employment with Knight at least once within that time frame. *Id.* ¶ 5. She further testified that Knight issued at least 10,000 wage statements to no more than 800 drivers who were California residents and/or assigned to a California terminal from December 5, 2023, through February 2025. *Id.* Finally, Rohwer shared that Knight drivers who are California residents and/or assigned to a California terminal typically work at least eight (8) hours a day and that such drivers are paid the applicable California minimum wage rate. *Id.* ¶¶ 6–7.

Sciascia testified, in pertinent part, that California resident drivers and drivers assigned to a California terminal typically spend at least five (5) hours per week engaged in on-duty, non-driving activities. Sciascia Decl. ¶ 3.

The principal issue before the Court is whether the assumptions that Knight's Opposition relies upon to calculate the amount in controversy estimate are reasonable. *See Ibarra*, 775 F.3d at 1197 (assumptions of damages "cannot be pulled from thin air but need some reasonable ground underlying them"). For the reasons set forth below, the Court does not find that the assumptions that Knight relies on to compute the amount in controversy are reasonable. Accordingly, the Court does

not find that Defendants have met their burden of showing by a preponderance of the evidence that the CAFA's $5 million jurisdictional threshold has been satisfied.[3]

### A. Failure to Pay Minimum Wage and Liquidated Damages

For the First Cause of Action, failure to pay minimum wage, Knight assumes a putative class size of 1,000 drivers, who worked a total of 50,000 workweeks during the claim period and worked five hours of unpaid, non-driving activities each week of their employment with Knight (i.e., a 100% violation rate). Knight Opp'n at 12–13. Relying on an average minimum wage rate of $13.00, which Knight asserts was the lowest state minimum wage rate during the claim period,[4] Knight calculates $3,250,000 in total unpaid minimum wage: (50,000 workweeks x 5 hours x $13.00). *Id.* at 13. Knight also asserts that the amount in controversy for the minimum wage claim will continue to increase through trial, which it estimates to be at least two and a half years away. *Id.* at 14. Knight estimates that the amount in controversy will increase by *at least* $2,000,000 for the minimum wage claim alone, which it calculates using California's current minimum wage rate of $16.50, 25,000 cumulative workweeks worked by the putative class members over the course of two years, and a 100% violation rate of five hours of unpaid, non-driving work per week for each putative class member [25,000 workweeks x 5 hours x $16.50]. *Id.* ¶ 43. Taken altogether, Knight calculates the amount of unpaid minimum wages to be $5,250,000 along with another $5,250,000 in liquidated damages for a total amount in controversy of $10,500,000. *Id.* ¶ 45.[5]

Lindsey argues that Knight has provided no evidence to support its assumption that the putative class is comprised of at least 1,000 members and that the class worked at least 50,000 workweeks during the claim period. MTR at 5. Lindsey also contends that Knight's use of a 100%

---

[3] Lindsey contends that there are no grounds for the Court to accept any assumptions on which Knight relies on its amount in controversy computations in light of the significant discovery that Knight acknowledges it has performed in related matters. MTR at 5. However, Lindsey provides no authority to support this proposition, and binding authority dictates opposite. *Perez*, 131 F.4th at 809 ("[A] removing defendant may rely on assumptions to establish the amount in controversy ….") (citing *Ibarra*, 775 F.3d at 1198).

[4] The Court notes that while Knight asserts $13.00 is the lowest minimum wage during the claim period, it provides no evidence and points to no allegations within the Complaint that substantiate this assertion.

[5] Lindsey seeks liquidated damages under Labor Code Section 1194.2 for the failure to pay minimum wage claim.

violation rate to calculate the amount in controversy for the minimum wage claim is unreasonable. *Id.* at 6–8. Lindsey further argues that Knight's assumption that each putative class member spent five hours a week performing unpaid, non-driving work is purely speculative and unsupported. *Id.* at 8–9.

Knight argues that Lindsey's arguments challenging the 100% violation rate are foreclosed by *Perez v. Rose Hills Co.* 131 F.4th 804, 807 (9th Cir. 2025). Knight Opp'n at 11–12

In *Perez*, the Ninth Circuit held that, *notwithstanding a lack of supportive evidence produced by the defendant*, a removing defendant's assumptions concerning a violation rate may be deemed reasonable *where it is reasonably tethered to the language of the complaint*. 131 F.4th at 808. Therefore, the Court first considers whether the 100% violation rate assumed by Knight for the minimum wage claim is reasonably tethered to the language of the complaint.[6] Knight justifies this assumption based on the following allegations in the Complaint: (1) Knight "had a uniform policy of only compensating Drivers for time spent actually driving;" (2) Knight "maintained a uniform policy of only compensating Drivers for time spent driving or transporting freight, regardless of whether Defendant suffered or permitted Drivers to work;" (3) Knight "maintained a policy and practice of requiring Drivers . . . to work off-the-clock to complete pre-trip inspections of [Knight's] trucks;" and (4) Knight "maintained a uniform policy of refusing to compensate its Drivers . . . for non-driving time." Compl. ¶¶ 22, 46–50.

With respect to Knight's assumed 100% violation rate, the Court finds that this assumption is consistent with the allegations that Knight cites as justification. In particular, Lindsey alleges that Knight administered a "uniform policy of *only* compensating Drivers for time spent actually driving or transporting freight" and that "[d]uring all times relevant hereto, Defendant maintained a uniform policy of refusing to compensate its Drivers … for non-driving time," without any limiting language. This provides a reasonable basis for Knight to assume a 100% violation rate. Lindsey alleges a broad, uniform policy of minimum wage violations, and it is reasonable for Knight to assume from

---

[6] The Court notes that that Knight's assumption of future violations in its amount in controversy calculation is *not* speculative. Given that Knight's position is that its pay policies are in compliance with the law, it is fair to assume it will continue these same practices unless and until the Court renders a decision otherwise.

1  Lindsey's allegations that all members of the putative class worked unpaid, non-driving activities
2  each week that they actually worked with Knight. And Lindsey has offered no competent evidence
3  in rebuttal to Knight's assumption.
4        In addition to the allegations in the Complaint, Knight relies on the declaration of Mathew
5  Sciascia also supports of Knight's assumed 100% violation rate. Knight Opp'n at 13. Sciascia is the
6  Senior Director of Safety for Knight Transportation. Sciascia Decl. ¶ 1. He testified that Knight's
7  drivers "typically spend at least five hours per week in on-duty, not driving activities . . . ." Sciascia
8  Decl. ¶ 3. In support of this assertion, Sciascia pointed to the hours of service logs that Knight is
9  required to keep in order track drivers' working hours. *Id.* ¶ 2. Sciascia had access to these records
10 pursuant to his role with the company. *Id.* ¶ 1. Sciascia also pointed to his general knowledge of the
11 working hours that Knight's California-based drivers spend fulfilling on-duty, non-driving
12 requirements and his review of company records that are available to him through his job. *Id.* ¶¶ 1, 3.
13       The Court finds that Sciascia's declaration further justifies Knight's assumed 100% violation
14 rate and also supports Knight's assumption that each member of the putative class performed five
15 hours of on-duty, non-driving responsibilities during each week that they worked.
16       Lindsey challenges Sciascia's declaration mainly on ground that it is not competent evidence.
17 Lindsey Reply at 4–5. In particular, Lindsey takes issue with Sciascia's failure to identify which
18 documents he reviewed or what specific information he relied on to support his conclusions. *Id.* at 5.
19 Lindsey also challenges Sciascia's lack of clarity as to the data pointed him to his conclusions. *Id.*
20 However, Knight need not present the business records themselves. *See Lewis v. Verizon Commc'ns,*
21 *Inc.*, 627 F.3d 395, 397 (9th Cir. 2010) ("To satisfy its burden in this case, the removing defendant
22 … supplied an affidavit to show that the potential damages could exceed the jurisdictional amount.
23 We conclude this showing satisfies [defendant's] burden."). It is sufficient, at this stage, for Knight
24 to rely on declarations with sufficient foundation. And contrary to Lindsey's argument, sufficient
25 foundation exists here because Sciascia is Director of Safety for Knight Transportation who attests to
26 his employment responsibilities, his review of company documents available to him through those
27 responsibilities, and his personal knowledge of the facts that are set forth in his declaration. Sciascia
28 Decl. ¶ 1; *see* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced

sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony"); *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990) (concluding that an affiant's personal knowledge of corporate activities may be inferred in light of the affiant's professional role with defendant firm).

Lindsey also contends that Knight's reliance on (1) an estimated putative class size of at least 1,000 members, and (2) an estimated aggregate number of 50,000 workweeks as to the putative class are unsupported by the evidence that Knight produces. To support these assumptions, Knight relies on the declaration of Rohwer, who testified "[b]ased on Knight Transportation's payroll records, Knight Transportation *employed* drivers that are California residents and/or assigned to a California terminal for at least 50,000 aggregate weeks during" the claim period. Rohwer Decl. ¶ 4.

With respect to Knight's 50,000 aggregate workweek determination, Lindsey contends that Knight failed to provide any evidence that indicates each member of the putative class in fact worked each week that they were employed as drivers by Knight. Lindsey Reply at 4. In other words, Lindsey draws a distinction between a week of employment by Knight, which may consist of time wherein members of the putative class were not on assignment, and a week performing the duties of a commercial driver (i.e., transporting goods). *Id.* Lindsey reiterated this argument during the August 28, 2025 hearing on the Motion.

The Court finds that the Rohwer Declaration does not provide a sufficient basis for Knight's assumption that members of the putative class *worked* a collective total of 50,000 workweeks. As Lindsey correctly notes, Rohwer does not clarify whether each member of the putative class performed commercial driver duties each week that they were *employed* by Knight during the claim period. Nor does Knight provide any evidence suggesting that the aggregate number of weeks in which members of the putative class worked is even close to the 50,000 workweeks. Thus, Knight fails to provide any evidence concerning the frequency that the members, in fact, worked during the 50,000 aggregate weeks in which they were employed by Knight, rendering this assumption unreasonable.

As the Ninth Circuit made clear in *Jauregui*, if the removing party's assumption "is unreasonable on its face without comparison to a better alternative," then the Court may "simply

reject that assumption and conclude that the defendant failed to meet its burden" without identifying specific alternative assumptions. 28 F.4th at 996. Here, because Knight relies on an unreasonable assumption of 50,000 aggregate workweeks to make its amount in controversy calculation, the Court finds that Knight's amount in controversy estimate to be speculative. *Ibarra*, 775 F.3d at 1197. Accordingly, the Court finds that Knight has not demonstrated its minimum wage calculation by a preponderance of the evidence. In light of the Court's finding as to Knight's minimum wage valuation, the Court also finds that Knight's valuation as to liquidated damages, which is based on Knight's calculation of the minimum wage claim, is unsupported as well. Cal. Lab. Code § 1194.2.

### B. Failure to Pay Wages Due Upon Termination

Pursuant to Labor Code Section 203, "[i]f an employer willfully fails to pay, without abatement or reduction, in accordance with [California Labor Code] Sections 201 [or] 202 . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Lab. Code § 203.

Knight asserts that Lindsey's Fourth Cause of Action, failure to pay wages due upon termination, places $1,680,000 in controversy. Knight Opp'n at 17–18. To reach this amount, Knight assumes: (1) 500 members of the putative class are eligible for this claim, (2) Knight's drivers typically worked at least eight hours per day, (3) the 500 members of the putative class earned at least the California minimum wage during their employment with Knight, and (4) each member of the subset class have some allegedly unpaid wages and thus would be eligible to waiting time penalties (i.e., a 100% violation rate). *Id*. at 17–18. Knight also uses the lowest California minimum wage rate during the claim period—$14.00, and the maximum statutory penalty under Labor Code Section 203—30 days.[7] Based on these assumptions, Knight's amount in controversy calculation is as follows: (500 former employees x $112 per day [8 hours per day x $14.00 minimum hourly wage] x 30 days).

---

[7] Similar to Lindsey's minimum wage claim, the Court notes that while Knight asserts this is the lowest minimum hourly wage during the claim period, it provides no evidence or records and points to no allegations within the Complaint that substantiate this assertion.

In support of the assumptions it relies on in its computation, Knight points to Lindsey's allegation that Knight "failed to provide its Drivers, including Plaintiff, with earned wages due," in accordance with Labor Code Sections 201–203. *Id*. at 17. In addition, Knight asserts that Lindsey's waiting time penalty is derivative of her minimum wage claim, and cites Lindsey's allegation that Knight's "Drivers, including Plaintiff, were entitled to payment of all wages and overtime premium pay earned within 72 hours of termination for a voluntary termination." *Id.*

The Court finds that Knight's reliance on the 30-day maximum statutory penalty for each member of the subclass potentially eligible for this claim is speculative and unreasonable. As Lindsey correctly points out, the allegations in the Complaint that Knight cites to justify this assumption give no indication that all subclass members who may be eligible for waiting time penalties are owed the maximum statutory penalty. Moreover, Knight does not produce evidence to support this assumption. The deficiency in supporting allegations combined with the absence of evidentiary support for Knight's assumption renders the reliance on a maximum statutory penalty for each member of the subclass unreasonable. *Ibarra*, 775 F.3d at 1199 ("[A] damages assessment may require a chain of reasoning that includes assumptions. When that is so, those assumptions cannot be pulled from thin air but need some reasonable ground underlying them."). Therefore, the Court finds that Knight has not demonstrated its waiting time penalty calculation by a preponderance of the evidence.

### C. Failure to Provide Accurate Itemized Paystubs

Labor Code Section 226(e) provides penalties for violations of the wage statement requirements set forth at Labor Code Section 226(a). The penalty scheme under this statutory provision requires: $50 or actual damages per employee for the initial pay period in which a violation occurs and $100 per employee for each violation in a subsequent pay period, not to exceed an aggregate amount of $4,000 per employee. Cal. Lab. Code § 226(e).

The Fifth Cause of Action alleges Labor Code Section 226(a) violations. Based on its argument that a one-year statute of limitations applies to this claim, Knight Opp'n at 16 n.3 (citing Cal. Civ. Proc. Code Section 340), and *Trigueros v. Stanford Fed. Credit Union*, No. 21-CV-01079-BLF, 2021 WL 2649241, at * 7 (N.D. Cal. June 28, 2021), Knight assumes (1) a 100% violation

rate, and (2) a total of 10,000 wage statements were distributed to 800 putative class members during the claim period. Knight Opp'n at 15–16. Accordingly, Knight calculates $960,000 in controversy as follows: ([800 total putative class members x $50.00] + 9,200 [10,000 total wage statements – 800 putative class members] x $100.00]).[8]

Knight contends that the use of a 100% violation rate is appropriate here because the wage statement claim is derivative of Lindsey's claim for unpaid minimum wages, and because Lindsey's allegations support unpaid wages for every putative class member each week that they were employed with Knight. *Id*. at 16. According to Knight, this permits a reasonable assumption that every wage statement issued to the putative class members was defective in some form. *Id.* In addition, Knight points to Lindsey's allegation that Knight "failed to provide any of its Drivers with an itemized statement that accurately states the gross wages earned by the Drivers." Compl. ¶ 65; Knight Opp'n at 15.

Lindsey contends that Knight's failure to identify the number of pay periods worked by members of the putative class and its failure to provide any information regarding the frequency of its pay periods (i.e., the number of paystubs issued during the claim period) render its amount in controversy estimate unreasonable. MTR at 10. In addition, Lindsey argues that it is unreasonable for Knight to assume 200 of Knight's current employees qualify for the $4,000 maximum penalty under Labor Code Section 226(e).

The Court finds that—in light of the explicit language of the Complaint that Knight "has failed to provide *any* of its Drivers with an itemized statement that accurately states the gross wages earned by the Drivers," its reliance on a 100% violation rate assumption is *not* unreasonable.

However, the Court finds that, Rohwer's Declaration is insufficient to support Knight's assumption of 10,000 total wage statements in its amount in controversy computation. Knight cites no allegations in the Complaint to justify this assumption. Rather, Knight relies solely on Rohwer's

---

[8] The Court notes that Knight appears to have used a different methodology for calculating the estimated amount in controversy for wage statement penalties in its Opposition relative to the NOR. *Compare* Knight Opp'n at 16, *with* NOR ¶ 49. The differing methodologies lead to significantly different amount in controversy valuations.

Declaration. *See* Knight Opp'n at 16. Rohwer stated that "Knight issued at least 10,000 wage statements to more than 800 drivers who were California residents and/or assigned to a California terminal" during the claim period. Rohwer Decl. ¶ 5. As previously explained, Rohwer's declaration does not clarify the frequency that members of the putative class performed work responsibilities during the period in which they were employed by Knight. As Lindsey correctly argues, because Rohwer's declaration does not clarify the frequency that the drivers worked while employed by Knight during the claim period, it is unreasonable for Knight to assume every itemized paystub that the putative class members received during the claim period and during their employment with Knight covered time that the drivers performed work responsibilities and therefore was even capable of being erroneous. Lindsey Reply at 4.

Accordingly, the Court, having considered the evidence offered—including the declaration and allegations to support the valuation of the wage statement claim—finds that Knight has failed to demonstrate by a preponderance of the evidence that the amount in controversy valuation as to the wage statement claim is reasonable.

### D. Unlawful Deductions, Expense Reimbursements, and Regular Payment of Wages

The NOR asserts that Lindsey's Second Cause of Action, failure to reimburse business expenses, Third Cause of Action, failure to pay wages, and Sixth Cause of Action, unlawful deduction, "add millions of dollars to the amount in controversy." NOR ¶ 57. However, Knight fails to provide an amount in controversy valuation for these claims, an explanation for its assertion that these claims will add millions of dollars to the total amount in controversy, or any evidentiary support for these assertions. *See generally* Knight Opp'n. Because Knight fails to justify its assertion that these claims will "add millions to the total amount in controversy," the Court finds the assertion unreasonable.

### E. Attorneys' Fees

"[A] court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met. The defendant retains the burden, however, of proving the amount of future attorneys' fees by a preponderance of the evidence." *Arias*, 936 F.3d at 927–28 (internal quotation marks and citations omitted).

Knight calculates the attorneys' fees estimate using the "benchmark" method of one-fourth of the estimated total penalties in controversy. Knight Opp'n at 19. Knight also provides a more conservative estimate for attorneys' fees using the "lodestar" method. *Id*. at 18–19.

The Court need not address whether Knight's attorneys' fees estimate is reasonable. Considering the Court's previous findings, the estimated judgment on which the proposed "benchmark" attorney's fees valuation relies is not supported by sufficient evidence. Put another way, insofar as the Court finds the amounts in controversy estimates for the claims unreasonable, Knight's attorneys' fees estimate using the "benchmark" method, by derivation, would also be calculated through the use of unreasonable violation rates. Moreover, even assuming the "lodestar" method valuation is correct, the combined total falls below the $5 million jurisdictional requirement.

## IV. Conclusion

In light of the foregoing, the Court orders as follows:

1. The Motion to Remand (ECF No. 13) is GRANTED.
2. The Case is REMANDED to the Superior Court of California for the County of San Bernardino.
3. The Motion to Dismiss or in the Alternative Stay Action (ECF No. 12) is DENIED as MOOT.

IT IS SO ORDERED.

Dated: October 21, 2025

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge